HEXT v. MORIARTY.

1. Specific Performance—Contract for Contingent Fee—Sufficiency of Evidence.

   In suit by attorney to establish and specifically enforce contract on contingent fee basis for legal services in connection with probating estate of which defendant was one of heirs, evidence *held*, sufficient to establish that defendant entered into said contract with knowledge of its contents.

2. Same—Attorney and Client—Contingent Fee—Equity.

   Court of equity will scrutinize with care agreement between attorney and heirs-at-law for services to be rendered in connection with probating estate on contingent fee basis, and will, if facts warrant it, relieve them from any undue advantage secured thereby.

3. Same.

   Where liquid assets were insufficient to pay claims allowed against estate, heirs-at-law were personally unable to protect their interests, and results which might be accomplished by efforts of attorney to conserve estate were uncertain, specific enforcement of contract to render legal services in consideration of receiving one-fourth of heirs' share was properly decreed.

4. SAME—VENUE—EQUITY—JURISDICTION.

Where one of heirs-at-law, who had signed contract to give attorney one-fourth of his share of estate in consideration of services to be rendered in connection with probating estate, wrongfully took said contract and denied liability thereunder, suit for its establishment and specific enforcement was properly brought in county where realty, part of assets of estate, was located, when estate was ready for distribution, although none of parties, who were residents of Michigan, were residents of said county (3 Comp. Laws 1929, § 13997, subd. 12).

Appeal from Clare; Hart (Ray), J. Submitted June 17, 1932. (Docket No. 58, Calendar No. 36,215.) Decided September 16, 1932.

Bill by Charles F. Hext against John J. Moriarty and others to establish and specifically enforce contract for legal services. Decree for plaintiff. Defendants appeal. Affirmed.

*Charles F. Hext,* in pro. per.

*Pheney & Pheney,* for defendants.

SHARPE, J. Michael H. Moriarty, of Crystal Falls, in the county of Iron, died, intestate and unmarried, on December 30, 1923. His heirs-at-law were two brothers, James, an inmate of the Soldiers' Home at Grand Rapids, the defendant John J., of Hudson, in Lenawee county, hereafter called the defendant, an unmarried sister, Margaret, also of Hudson, Helen L. Reidsema, Emmet Moriarty, Irene V. Moriarty, and Florence Tingsted, of Detroit, children of his deceased brother Thomas, and William Haley, of Toronto, Canada, the son of his deceased sister Mary.

John Wall was duly appointed administrator of his estate. Claims were presented and allowed at the sum of $70,096.11. The liquid assets were not

sufficient to pay them. The deceased owned at the time of his death 40 acres of land in the county of Clare, a farm in the county of Lenawee, and certain real estate in the county of Iron. He also owned an undivided one-third interest in land known as the "Sherwood Mine," then under lease to the Republic Iron & Steel Company.

In the fall of 1924 there was correspondence between John J. Moriarty and Helen L. Reidsema and William J. Embs, the judge of probate of the county of Iron, relative to said estate, and on November 29th the judge wrote Mrs. Reidsema that the administrator had resigned, and suggested the appointment of Thomas Conlin as his successor. This suggestion was not agreeable to her, and soon after she got into communication with the plaintiff, an attorney residing in Grand Rapids, by telephone, and a meeting of the heirs was arranged, to be held at the home of Margaret in Hudson. Mrs. Reidsema secured a power of attorney from her brother and sisters to act for them in the matter. The meeting was held on December 13, 1924, at which she and Margaret and the defendant and his son Joseph and the plaintiff were present.

As a result of his telephonic communication with Mrs. Reidsema, the plaintiff had drafted contracts for execution by the heirs, providing for his looking after their interests on a contingent basis. After discussion, which lasted for some time, an agreement was signed by the defendant, in which he (as first party) agreed to employ the plaintiff (as second party) as his attorney and agent "to protect, conserve and enforce his interests in said estate," and to take any proceedings necessarily incidental thereto. It also contained the following:

"Said first party further agrees to pay to second party 25 per cent. of his share of said estate as such

heir-at-law as and whenever the same or any part thereof may be received from said estate, hereby assigning to said second party one-fourth interest of said first party to said second party, which said share of said estate shall be in full payment of any and all services rendered or to be rendered by said second party, as such attorney or agent, for and on behalf of said first party, and said first party shall not be liable to said second party individually for any amount whatever for the services of said second party except the share hereinbefore mentioned.''

The plaintiff agreed to accept such employment on the terms and conditions set forth therein. A similar contract was entered into by Mrs. Reidsema on behalf of herself and her brother and sisters. A contract containing the same provisions as to compensation was entered into by Margaret, but it seems to have had eliminated from it a provision for the payment of expenses, which appeared in the others.

In the afternoon of that day, the plaintiff and Mrs. Reidsema were taken in an automobile to Adrian to take a train for Detroit. When they arrived there, the plaintiff discovered that he had left his brief case, in which the contracts had been placed, in the room where the conference was held at Hudson. He requested defendant's son, Joseph, who was then present, to send it to him at Grand Rapids by express. On returning to Hudson, Joseph found the brief case there. It is his claim that plaintiff requested him to open it and mail a blank contract which was in it to William Haley, the heir who lived in Toronto; that he and his father looked over the Haley contract, and they discovered that it provided for plaintiff's receiving a one-fourth of his interest in the estate, whereas the agreement was that plaintiff was to receive but ''25 per cent. of what he would save the estate on claims;'' that they discovered

that a similar provision was in the contract signed by defendant; that they kept the contract signed by him, and soon after delivered the brief case to Mrs. Reidsema in Detroit, and urged her to abstract that signed by her therefrom. She refused to do so, and forwarded the case to the plaintiff at Grand Rapids.

The plaintiff thereafter made demand upon the defendant for the delivery of the contract, which was refused. Assuming that it was in force, he attended the session of the probate court at which a successor administrator was appointed, and thereafter performed services of much value to the heirs of the deceased. The defendant declined to participate with him in his efforts to prevent the sacrifice of the property to pay the indebtedness, but attended the meeting of the probate court and otherwise interested himself in the affairs of the estate. The details of the efforts put forth by plaintiff to raise the money with which to pay the indebtedness need not be stated. It is enough to state that he accomplished this result, and that at the time the bill was filed the estate was ready for distribution under 3 Comp. Laws 1929, § 15728.

On July 16, 1927, the plaintiff filed the bill of complaint herein in the circuit court for the county of Clare. He set up therein the material facts above stated; alleged that one of the descriptions of real estate (describing it) owned by the deceased was located in that county, and that the estate was ready for distribution. He set forth with some particularity the service he had performed in behalf of said heirs, and prayed that a decree be entered establishing the contract and ordering its specific performance by the defendant.

In his answer to the bill, John J. Moriarty averred that the contract in question was not read to him by

the plaintiff before he executed it; that it did not express the agreement made between them, and that any services rendered by the plaintiff in behalf of the heirs of said estate were so rendered against his express wishes and desires. He also claimed the benefit of a cross-bill, praying therein for the cancellation of the contract. He thereafter filed a motion to dismiss the bill of complaint, for the reason that the court had no jurisdiction as none of the parties resided in the county of Clare.

The administrator was made a party for the purpose of securing an injunction restraining the distribution of the estate pending the hearing. His interests as such are not involved.

Proofs were taken in open court, after which the motion to dismiss was denied and the plaintiff granted the relief prayed for in his bill of complaint. In the opinion filed, the trial court said:

"The evidence clearly showed that the defendant, John J. Moriarty, had entered into a contract and power of attorney, which clearly conferred power upon the plaintiff, which was coupled with an interest in said contract and power of attorney, and hence cannot be revoked, by which defendant, John J. Moriarty, agreed to pay to the plaintiff 25 per cent. of his share of said estate as such heir-at-law and also assigned to the plaintiff said quarter of the interest of the said defendant, John J. Moriarty, and the evidence clearly showed that the contract was also in the possession of the plaintiff and that it was wrongfully taken from him by the defendants."

It will serve no useful purpose to review the evidence submitted. The fact that the defendant, John J. Moriarty, entered into the contract with a knowledge of its contents is established by a preponderance thereof.

While a court of equity will scrutinize with care an agreement of this kind made with an attorney, and will, if the facts warrant it, relieve from any undue advantage secured thereby, we feel satisfied that the inability of the heirs to personally protect their interests, the amount of the claims allowed, and the uncertainty of the result which the plaintiff might accomplish, justify the enforcement of the contract in question.

The motion to dismiss was based upon the fact that, while all of the parties were residents of the State of Michigan, none of them resided in the county of Clare. Jurisdiction of the persons of all of the defendants was duly acquired. Subsection 12 of section 13997, 3 Comp. Laws 1929, reads, in part, as follows:

"Every suit in chancery shall be commenced in the circuit court for the county in which the property in dispute is situated, if the subject-matter is local, and if it is not local, in the county where one of the parties in interest resides, if either is a resident of the State; but if the subject-matter is not local, and neither party resides in the State, the suit may be brought in any county; and where it is necessary to file an information or bill in chancery, either to compel the specific performance of contract, cancellation of patents from the State, quiet title, or otherwise to affect real estate and when such real estate may be situated in different counties, it shall be competent to file such information or bill on the equity side of the circuit court of any one of said counties in which a part of said real estate may be situated; and such court shall have complete jurisdiction in the premises as fully and effectually as if the whole of such estate were situate in the county in which suit may be commenced."

Counsel for the defendant contend that jurisdiction is dependent upon the provision in subsection 2 of this section, which reads as follows:

"All actions founded upon wrongs, and contracts, except as herein otherwise provided, shall be commenced and tried in the county where one of the parties shall reside at the time of commencing such action."

This suit is not brought to recover moneys due under the contract or damages for the breach thereof. It seeks restoration of the contract and specific performance thereof. Under it the defendant agreed that plaintiff should have a one-fourth interest in the property of the estate to which he would be entitled. The estate was ready for distribution. Among its assets to be distributed under section 15728 was land situate in the county of Clare. Defendant had wrongfully taken this contract from the possession of plaintiff and denied all liability thereunder. In our opinion, the nature of the relief prayed for conferred jurisdiction upon the court of that county.

The decree is affirmed, with costs to appellee.

Clark, C. J., and McDonald, Potter, North, Fead, Wiest, and Butzel, JJ., concurred.